UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

VERLON CRAIG DAVIS,

     Plaintiff,

v.                                                                  Case No.:  2:20-cv-781-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## **OPINION AND ORDER**

Plaintiff Verlon Craig Davis seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.     Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A.     Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.     Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v.*

*Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the ALJ must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

## C.     Procedural History

Plaintiff filed an application for a period of disability and disability insurance benefits on March 27, 2018, alleging disability beginning December 1, 2016. (Tr. 110, 199-202). The application was denied initially on July 25, 2018, and upon reconsideration on September 5, 2018. (Tr. 110, 125). Plaintiff requested a hearing and on August 22, 2019, a hearing was held before Administrative Law Judge ("ALJ") Eric Anschuetz. (Tr. 36-96). On October 8, 2019, the ALJ entered a decision finding Plaintiff not disabled from December 1, 2016, through the date of the decision. (Tr. 16-30).

Plaintiff requested review of the hearing decision, but the Appeals Council denied Plaintiff's request on August 6, 2020. (Tr. 1-5). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on October 6, 2020, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 19).

## D.     Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021. (Tr. 18). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of December 1, 2016. (Tr. 18). The ALJ noted that Plaintiff did work during the relevant time period, but

his earnings were not of a sufficient duration and the ALJ found that this work activity did not rise to the level of substantial gainful activity. (Tr. 18). At step two, the ALJ found that Plaintiff had the following severe impairments: "cervical and lumbar degenerative disc disease; obesity; joint dysfunction; fibromyalgia; and Sjogren's Syndrome." (Tr. 19). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 §§ C.F.R. 404.1520(d), 404.1525, and 404.1526). (Tr. 20).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.l567(b) except lift and/or carry 20 pounds occasionally and 10 pounds frequently. Stand and/or walk 6 hours in an 8[-] hour workday. Sit 6 hours in an 8[-]hour workday. Occasionally climb ladders and scaffolds. Never climb ropes. Occasionally climb ramps and stairs. Frequently balance. Occasionally stoop, kneel, crouch, and crawl. He should avoid concentrated exposure to dusts, odors, fumes, and gases. He should avoid concentrated exposure to workplace hazards such as unprotected heights and unshielded rotating machinery. No mental health limitations.

(Tr. 22). At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a deputy sheriff. (Tr. 29).

At step five, the ALJ relied on the testimony of a vocational expert to find that considering Plaintiff's age (51on the alleged disability onset date), education (at least

high school), work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Tr. 29). Specifically, the ALJ found that Plaintiff could perform such occupations as:

    (1)   electronics worker, DOT[1] 726.687-010, light, SVP 2

    (2)   mail room clerk, DOT 209.687-026, light, SVP 2

    (3)   production assembler, DOT 706.687-010, light, SVP 2.

(Tr. 30). The ALJ concluded that Plaintiff had not been under a disability from December 1, 2016, through the date of the decision. (Tr. 30).

## II.    Analysis

On appeal, Plaintiff raises the following three issues: (1) whether substantial evidence supports the ALJ's evaluation of fibromyalgia in the RFC; (2) Whether the ALJ properly considered Plaintiff's allegations; and (3) whether the Appeals Council erred in determining that additional evidence submitted by Plaintiff did not show a reasonable probability that it would change the outcome of the decision. (Doc. 25, p. 17, 31, 38).

### A.    Fibromyalgia

Plaintiff argues the ALJ erred in his consideration of Plaintiff's fibromyalgia. (Doc. 25, p. 18). Plaintiff claims that even though the ALJ found Plaintiff's

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

fibromyalgia a severe impairment, he failed to account for this impairment in the RFC, and instead discounted Plaintiff's complaints by improperly relying on diagnostic imaging and selective physical examination results and not taking into account Plaintiff's subjective complaints. (Doc. 25, p. 18). The Commissioner contends that the ALJ properly considered Plaintiff's fibromyalgia and properly determined Plaintiff's work-related limitations arising from fibromyalgia. (Doc. 25, p. 23).

Fibromyalgia is "characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissue that has persisted for at least 3 months. SSR 12-2p, 2012 WL 3104869, *2 (July 25, 2012). The Eleventh Circuit has recognized that fibromyalgia is a unique impairment because it "'often lacks medical or laboratory signs and is generally diagnosed mostly on a[n] individual's described symptoms.'" *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 863 (11th Cir. 2017) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). "Because the 'hallmark' of fibromyalgia is a 'lack of objective evidence,' a claimant's subjective complaints may be the only means of determining the severity of the claimant's condition and the functional limitations [he] experiences." *Id.* (citing *Moore*, 405 F.3d at 1211). An ALJ's decision is subject to reversal when the ALJ relies on lack of objective findings as a basis for an adverse decision. *Id.*

The Social Security Administration promulgated SSR 12-2p to provide guidance on how to determine whether a person has a medically determinable impairment of fibromyalgia and how it will evaluate this impairment in a disability claim. SSR 12-2p, 2012 WL 3104869 (July 25, 2012); *Francis v. Saul*, No. 8:18-cv-2492-SPF, 2020 WL 1227589, *3 (M.D. Fla. Mar. 13, 2020). The ruling informs ALJs in how to consider fibromyalgia in the five-step process. SSR 12-2p, 2012 WL 3104869 (July 25, 2012).

The ruling requires an ALJ to consider all relevant evidence in the case and all of a claimant's medically determinable impairments, including those that are not severe when making an RFC determination. SSR 12-2p at *6. "For a person with fibromyalgia, an ALJ must consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" *Id.* An ALJ must consider widespread pain and other symptoms associated with fibromyalgia such as fatigue that may result in exertional and non-exertional limitations, which prevent a person from doing a full range of unskilled work. *Id.* If the objective medical evidence does not support a claimant's statements about the intensity, persistence, and functionally limiting effects of symptoms, then an ALJ must consider a claimant's daily activities, medications, or other treatments the person uses or used to alleviate symptoms, the

nature and frequency of a claimant's attempt to obtain medical treatment for the symptoms, and statement by other people about the claimant's symptoms. *Id.* at *5.

In the decision, the ALJ found Plaintiff's fibromyalgia to be a severe impairment. (Tr. 19). While fibromyalgia has no medical listing, the ALJ cited SSR 12-2p in considering whether Plaintiff's fibromyalgia met any listing. (Tr. 21). He found it did not. (Tr. 21-22).

The ALJ then considered Plaintiff's subjective complaints.

> The claimant alleged disabling pain throughout his body due to fibromyalgia and Sjogren's Syndrome. He also alleged disabling pain due [sic] in his neck and back. Due to these, the claimant alleged difficulty sitting, standing, or walking for any significant period. He alleged difficulty lifting any significant weight repetitively. Overall, the claimant alleged difficulty consistently performing his activities of daily living independently.

(Tr. 23). As explained later, the ALJ determined that Plaintiff's medically determinable impairments could reasonably expected to cause the alleged symptoms, but his statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical and other evidence in the record. (Tr. 23). In other words, the ALJ found Plaintiff's impairments could cause the alleged symptoms, but in this case, the medical and other evidence does not support Plaintiff's subjective complaints. The ALJ then found that the objective evidence of record "strongly supports that the claimant can

perform work consistent with the" RFC, including the medical imaging, findings on physical examinations, and activities of daily living. (Tr. 23).

In support, the ALJ summarized the findings of x-rays and MRIs. (Tr. 23). He also thoroughly summarized the medical records from the medical sources. (Tr. 23-27). He considered treating neurosurgeon, Gary Correnti, M.D.'s records (Tr. 24). In September 2017, Dr. Correnti found Plaintiff had a normal gait, full upper extremity strength, full range of motion in the upper and lower extremities, cervical spine, and no tenderness to palpation of the cervical spine. (Tr. 24, 27 379). The October 2017 records generally reflected the same findings but also noted a tenderness to palpation of the cervical spine. (Tr. 24, 376). Dr. Correnti also found Plaintiff's pain was most likely all muscular and myofascial in nature and surgery for back pain was not warranted. (Tr. 24, 377). Dr. Correnti recommended conservative care with a chiropractor and to work on getting fit and losing some weight. (Tr. 24, 377).

In November 2017, Plaintiff saw rheumatologist Nosheen Mazhar, M.D. (Tr. 25, 384). He had not seen her for a year because he had been helping his brother run for election. (Tr. 25, 384). On examination, Dr. Mazhar found Plaintiff's DIP, PIP, and MCPs wrists elbows shoulders were nontender and not swollen. (Tr. 388). He had right midfoot inflammation. (Tr. 25, 388). "MTPs L mid feet ankle knees and hips are nontender and have full range of motion. Cspine flexion and lateral rotation

45 deg and extension is 0. Lumbar spine is nontender. SI joints are nontender. Spine otherwise nontender paravertebral muscles are nontender trochanteric bursa are nontender." (Tr. 25, 388).

The ALJ noted that in February 2018, Plaintiff saw rheumatologist Romy Aranguiz, M.D. (Tr. 25). Plaintiff reported a history of muscle and joint pain. (Tr. 465). As the ALJ noted, on examination Dr. Aranguiz found Plaintiff well-developed, well-nourished, in no distress, with a normal range of motion in the neck, neck supple, and a normal range of motion in the musculoskeletal area with myofascial tender points at the paraspinal muscles from neck to lower back and with stiffness, but no swelling. (Tr. 25, 468). Dr. Aranguiz determined a working diagnosis of stiff man and ankylosing spondylitis and "he may just have fibromyalgia, but I will first rule out other possible etiologies to explain his symptoms." (Tr. 25, 473).

The ALJ then reviewed records from pain management, including records from Jonathan Daitch, M.D. dated April 2018. (Tr. 24). Dr. Daitch found normal muscle tone in the lower extremity and normal paraspinous muscle tone, tenderness over the bilateral sacroiliac joint, and pain on extension and bending as to lumbar motion. (Tr. 24, 429). Dr. Daitch recommended injections to reduce the pain. (Tr. 430). For May and July 2018 visits, Dr. Daitch had similar findings. (Tr. 24, 528, 538-39).

In May 2018, Dr. Aranguiz examined Plaintiff and found he had a normal range of motion in his neck, multiple myofascial tender points, but no swelling at any level and he also found his feet were normal in appearance. (Tr. 25, 492). Dr. Aranguiz diagnosed Plaintiff with Sjogren's Syndrome without organ involvement, idiopathic chronic gout without tophus, and weakness of both legs, but his muscle strength in the lower extremities was not compromised at all. (Tr. , 25, 497). Dr. Aranguiz opined that Sjogren's Syndrome can be associated to myopathy, neuropathy, and even more severe neurologic complications. (Tr. 25, 497). Plaintiff's July and October 2018 examinations were essentially normal, but with myofascial tenderness in the back and lower extremities. (Tr. 25, 510, 585). In October 2018, Dr. Aranguiz stated: "he needs to start an exercise regimen, even with the pain, something mild like Tai chi for beginners." (Tr. 25, 589).

In October and November 2018, Plaintiff saw Alexander Martinez, M.D. for pain management. (Tr. 24-25, 559). Dr. Martinez found Plaintiff's neurologic exam was within normal limits except for diffuse spinal hypertonicity and paraspinal pain. (Tr. 24-25, 561). He noted prior MRIs showed a renal mass correlating with the area of greatest pain and an abdomen MRI showed cysts in bilateral kidneys. (Tr. 24-25, 561). He assessed Plaintiff with thoracic spondylosis. (Tr.24-25, 557). Dr. Martinez saw Plaintiff again in November 2018 and diagnosed him with Lumbar spondylosis. (Tr. 24-25, 555). Dr. Martinez found a "[p]aradoxical reduction in pain with

discontinuation/reduction of multimodal analgesic regimen." (Tr. 24-25, 555). Plaintiff had no neck pain and thoracic pain had significantly improved. (Tr. 24-25, 555). Plaintiff's symptoms were consistent with left GT bursitis, lumbar spondylosis with myofascial pain syndrome. (Tr. 24-25, 555).

In January 2019, Dr. Aranguiz found on examination that Plaintiff's neck had a normal range of motion and was supple. (Tr. 25, 610). Dr. Aranguiz also found Plaintiff's musculoskeletal area had a normal range of motion and he exhibited no tenderness, edema, or deformity. (Tr. 25, 610). He again recommended an exercise regimen even with the pain, including not only Tai Chi for beginners but also cycling, swimming, and walking for aerobic activity. (Tr. 25, 615). He diagnosed Plaintiff with Sjogren's Syndrome without extraglandular involvement, facial rash, and fibromyalgia. (Tr. 25, 615-16). In April 2019, Dr. Aranguiz found on examination normal range of motion in the neck and musculoskeletal area, with Plaintiff exhibiting tenderness but not edema in the musculoskeletal area. (Tr. 25, 704). His diagnosis was acute pain of right knee and arthralgia, unspecified joint. (Tr. 708).

In February 2019, Plaintiff returned to Dr. Martinez who diagnosed him with lumbar spondylosis, based on severe limitation in bilateral lumbar rotation, but with no radicular pain on exam. (Tr. 24-25, 553). He found Plaintiff's symptoms consistent with stiff person syndrome. (Tr. 24-25, 553). In June 2019, Plaintiff saw

Dr. Martinez who found Plaintiff's diffuse spinal pain and stiffness remained stable. (Tr. 666). He was tolerating home exercises as instructed by physical therapy and Tramadol. (Tr. 666). He neurological exam remained normal. (Tr. 24-25, 666).

In July 2019, Plaintiff again saw Dr. Aranguiz who noted in Plaintiff's history that he had fibromyalgia with classic myofascial pain and was taking medication for it. (Tr. 26, 755). He encouraged Plaintiff to lose more weight and exercise. (Tr. 25, 755). On examination, he found Plaintiff essentially normal with normal range of motion in the musculoskeletal areas, and no edema, tenderness, or deformity there. (Tr. 26, 760). He continued his diagnosis of Sjogren's Syndrome without extraglandular involvement, acute pain of right knee, fibromyalgia, stiff muscles, and acute midline low back pain without sciatica. (Tr. 25-26, 765-66). He also continued to recommend daily aerobic activity, pool exercises when possible, walking, bicycle riding, and all possible low impact and low intensity activities to start. (Tr. 25-26, 765).[2]

The ALJ summarized the physical examination findings and determined they strongly supported Plaintiff's ability to work consistent with the RFC. (Tr. 27). He

---

[2] In support of his argument, Plaintiff cites a February 2020 letter from Dr. Aranguiz. (Tr. 7). In the letter, Dr. Aranguiz found that Plaintiff "also suffers from severe, debilitating fibromyalgia, with frequent muscle spasms, and severe muscular stiffness and pain all over his body, frequently the spasms wake him up from sleep. The pain is sharp and lacerating, and he has limited mobility." (Tr. 7). The ALJ entered the decision on October 8, 2019, and therefore had no access to this letter. (Tr. 30). As a result, the Court will not consider this letter in determining whether the ALJ's erred in the decision.

found Plaintiff generally had a normal gait, full motor strength, and full range of motion. (TR. 27). He noted that at times Plaintiff had lumbar tenderness and a decreased range of motion, but also noted that Plaintiff benefitted from physical therapy, bilateral lumbar injections, and home exercises. (Tr. 27). The ALJ cited Plaintiff's rheumatologist Dr. Aranguiz who generally found Plaintiff to have normal objective examinations, except for tender myofascial points. (Tr. 27). Dr. Aranguiz encouraged Plaintiff to lose weight and increase his exercise. (Tr. 27). From these physical examination findings, the ALJ determined:

> Limiting the claimant to the performance of light work with occasional climbing of ladders, scaffolds, ramps, and stairs, never climbing ropes, frequently balance, occasionally performing other postural activities, and avoiding concentrated exposure to irritants and hazards fully accounts for objective physical examination findings in the medical evidence of record. Nothing in the physical examinations in the medical evidence of record demonstrate that the claimant is more limited than as assessed by the residual functional capacity finding. Accordingly, the physical examination findings strongly support that the claimant is able to perform work consistent with the residual functional capacity finding.

(Tr. 27). Thus, the ALJ considered all of Plaintiff's limitations and determined Plaintiff was capable of performing light work with limitations.

The ALJ then considered Plaintiff's activities of daily living. (Tr. 27). The ALJ found:

> The claimant's high functioning activities of daily living strongly support the claimant's ability to perform work

consistent with the residual functional capacity finding. The claimant testified that he is able to drive and perform chores such as helping with the laundry and going grocery shopping while pushing a cart. The claimant testified that he is able to use a phone for the Internet and that he is able to perform his own personal grooming and hygiene. The claimant testified that he exercises in his pool to take the pressure off his spine and stretch. The claimant testified he is able to perform childcare activities like driving his son to activities like bowling. (Hearing Testimony). Accordingly, the claimant's high functioning activities of daily living strongly support his ability perform work consistent with residual functional capacity finding.

(Tr. 27-28). The ALJ found Plaintiff's daily activities support the RFC findings. (Tr. 27).

The ALJ also found the State agency reviewing medical consultant, Richard Thio, M.D.'s June 7, 2018 opinion persuasive. (Tr. 28, 450-57). Dr. Thio determined Plaintiff could perform a reduced range of light work. (Tr. 28). The ALJ found Dr. Thio's opinion generally consistent with the other evidence of record, with the physical examination findings, and with Plaintiff's activities of daily living. (Tr. 28).

Along with Plaintiff's subjective complaints, the ALJ also considered objective medical evidence, including imaging and physical examination findings, medications, and other treatments such as physical therapy. The ALJ likewise considered Plaintiff's activities of daily living when considering Plaintiff's fibromyalgia and determining Plaintiff's RFC. Plus, the ALJ noted that Plaintiff worked after the alleged onset date although not at a substantial-gainful-activity level, and this "work activity is more consistent with the ultimate findings of this

decision than with the allegation of work-precluding debility." (Tr. 19).[3] The ALJ specifically limited Plaintiff to light work and other postural limitations as well as environmental limitations based on Plaintiff's impairments, including fibromyalgia.

The ALJ considered the record as a whole, including both favorable and unfavorable evidence, and properly considered Plaintiff's severe impairment of fibromyalgia in accordance with SSR 12-2p. The ALJ then included limitations in the RFC for Plaintiff's impairments that were supported by the medical and other evidence of record. Moreover, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). Even if the evidence preponderates against the Commissioner's decision, the Court must affirm if substantial evidence supports the Commissioner's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). On consideration of the record as a whole, substantial evidence supports the ALJ's consideration of Plaintiff's fibromyalgia and the RFC assessment.

---

[3] Plaintiff testified that after his alleged onset date of December 1, 2016, he worked helping his wife's boss with home-watch duties. (Tr. 45). His duties included going to a house, running the water, and walking around the house to make sure nothing was broken or needed fixing. (Tr. 45). He would also run errands for the business and wait in a house for a vendor, a delivery, or technicians to do a job. (Tr. 45-46).

**B.      Subjective Complaints**

Plaintiff argues that the ALJ did not properly evaluate Plaintiff's subjective complaints of pain. (Doc. 25, p. 31-34). Specifically, Plaintiff argues that the ALJ improperly relied on Plaintiff's activities of daily living to discount Plaintiff's subjective complaints. (Doc. 25, p. 32). The Commissioner responds that the ALJ properly found Plaintiff's statements regarding the intensity, persistence, and limiting effects of Plaintiff's symptoms were not entirely consistent with the medical evidence and other evidence of record. (Doc. 25, p. 35). The Commissioner argues the ALJ reached this conclusion by considering the objective medical evidence, the treatment records advising greater physical activity, the prior administrative findings, and his activities of daily living. (Doc. 25, p. 35).

A claimant may establish that he is disabled through his own testimony of pain or other subjective symptoms. *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). In such a case, a claimant must establish:

> "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

*Id.* (quoting *Dyer*, 395 F.3d at 1210).

When evaluating a claimant's testimony, the ALJ should consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication to alleviate pain or other symptoms; (5) treatment other than medication for relief of pain or other symptoms; (6) any measures a claimant uses to relieve pain or other symptoms; and (7) other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019).

The ALJ must consider these factors given all of the evidence of record. *Ross*, 794 F. App'x 867. And if the ALJ discredits this testimony, then the ALJ "'must clearly articulate explicit and adequate reasons for' doing so." *Id.* (quoting *Dyer*, 395 F.3d at 1210). The ALJ may consider the consistency of the claimant's statements along with the rest of the record to reach this determination. *Id.* Such findings "'are the province of the ALJ,' and we will 'not disturb a clearly articulated credibility finding supported by substantial evidence.'" *Id.* (quoting *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014)). A decision will be affirmed as long as the decision is not a "broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (quotation and brackets omitted).

The ALJ considered Plaintiff's subjective complaints. The ALJ acknowledged that Plaintiff alleged disabling pain throughout his body due to fibromyalgia and Sjogren's Syndrome. (Tr. 23). And the ALJ acknowledged that Plaintiff also alleged disabling pain in his neck and back. (Tr. 23). Based on these complaints, the ALJ noted that Plaintiff alleged difficulty sitting, standing, or walking for any significant period. (Tr. 23). He also alleged difficulty lifting any significant weight repetitively. (Tr. 23). "Overall, the claimant alleged difficulty consistently performing his activities of daily living independently." (Tr. 23).

After consideration of Plaintiff's allegations, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence of record. (Tr. 23). The ALJ then thoroughly summarized the objective medical tests, such as x-rays and MRIs. (Tr. 23-24). He also thoroughly summarized the treatment notes from Plaintiff's neurosurgeon, pain management physicians, and rheumatologists. (Tr. 24-26). The ALJ then found that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms are inconsistent with medical imaging, findings on physical examination, and Plaintiff's high functioning activities of daily living. (Tr. 26). After again summarizing the imaging and physical examinations and finding they support the

RFC assessment, the ALJ then considered Plaintiff's daily activities. (Tr. 27). The

ALJ found:

> The claimant's high functioning activities of daily living strongly support the claimant's ability to perform work consistent with the residual functional capacity finding. The claimant testified that he is able to drive and perform chores such as helping with the laundry and going grocery shopping while pushing a cart. The claimant testified that he is able to use a phone for the Internet and that he is able to perform his own personal grooming and hygiene. The claimant testified that he exercises in his pool to take the pressure off his spine and stretch. The claimant testified he is able to perform childcare activities like driving his son to activities like bowling. (Hearing Testimony). Accordingly, the claimant's high functioning activities of daily living strongly support his ability perform work consistent with residual functional capacity finding.

(Tr. 27-28).

Plaintiff argues that the ALJ's heavy reliance on these activities to discredit

Plaintiff's testimony regarding pain is inappropriate. (Doc. 25, p. 32). He argues that

these activities do not contradict Plaintiff's disability. (Doc. 25, p. 32). Plaintiff also

argues that the ALJ's description of Plaintiff's daily activities omits crucial

qualifiers that Plaintiff placed on them. (Doc. 25, p. 33). Plaintiff claims that while

he can drive, he only drives two or three times per week. (Doc. 25, p. 34). And while

he helps with the laundry, he must take breaks when doing it. (Doc. 25, p. 34).

Plaintiff also claims the ALJ failed to mention that although Plaintiff goes grocery

shopping, he must lean on a cart or use a motorized cart. (Doc. 25, p. 34). And the

ALJ failed to mention that Plaintiff needs assistance in the restroom. (Doc. 25, p.

34). The Commissioner argues that in reaching the finding that Plaintiff's statements concerning intensity, persistence, and the limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence of record, the ALJ cited objective medical evidence, treatment records, and his daily activities. (Doc. 35).

Indeed, an ALJ should consider a claimant's daily activities in evaluating subjective complaints. 20 C.F.R. §§ 404.1529(c)(3); *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019). Here, the ALJ exhaustively summarized the generally unremarkable medical imaging, the treatment records – including those that encouraged Plaintiff to engage in greater physical activity despite his pain – and Plaintiff's daily activities. (Tr. 26-28). The ALJ did not rely solely on Plaintiff's daily activities in making a finding as to Plaintiff's subjective complaints. Further, the ALJ did not totally discount Plaintiff's subjective complaints based on his activities of daily living. Instead, the ALJ found Plaintiff's activities support his ability to perform work consistent with a reduced range of light work with added limitations. (Tr. 27). The ALJ thoroughly articulated specific reasons supported by substantial evidence of record to support the subjective complaint finding and considered Plaintiff's medical condition and other evidence of record as a whole. Thus, the ALJ did not err in his determination regarding Plaintiff's subjective complaints.

### C.    Evidence Submitted to the Appeals Council

Plaintiff submitted a letter in the form of a medical source statement to the Appeals Council from rheumatologist Dr. Aranguiz dated February 3, 2020, which is after the date of the ALJ's decision.[4] (Tr. 7). Plaintiff contends that Dr. Aranguiz treated Plaintiff for two years for fibromyalgia and this letter contains Dr. Aranguiz's opinion that Plaintiff suffers from severe, debilitating fibromyalgia, with additional symptoms of pain. (Doc. 25, p. 39). Plaintiff argues that the Appeals Council erred in refusing to consider this evidence or remand the case to the ALJ to consider this evidence. (Doc. 25, p. 39). The Commissioner contends substantial evidence supports the Appeals Council's decision. (Doc. 25, p. 42).

"'With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process,' including before the Appeals Council." *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quoting *Ingram v. Comm'r of Soc., Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir.2007)). Under new regulations effective in 2017,[5] the Appeals Council will review a case when it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable

---

[4]  The Court does not find that the letter has a date on it, but the parties agreed it was submitted on February 3, 2020, after the date of the ALJ's decision. (Doc. 25, p. 38, 42). Thus, the Court accepts that the letter was submitted on this date. (Tr. 7).

[5]  In 2016, 20 C.F.R. § 404.970 was amended, effective January 17, 2017, but with compliance not required until May 1, 2017. *See* 81 Fed. Reg. 90987, 90996 (Dec. 16, 2016).

probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5); 20 C.F.R. § 416.1470(a)(5). New evidence is chronologically relevant if it relates to the period on or before the date of the ALJ's decision. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018). The new regulation added an additional requirement that the Appeals Council "will only consider additional evidence under paragraph (a)(5) of this section if you show good cause for not informing us about or submitting the evidence as described in § 416.1435…." 20 C.F.R. § 404.970(b); 20 C.F.R. § 416.1470(b).

The Appeals Council need not give a detailed explanation or further address each piece of new evidence individually. *Hargress*, 883 F.3d at 1309 (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014)). If the ALJ's decision is contrary to the weight of the evidence – including the new evidence – then the Appeals Council must grant the petition for review. *Id.*

Dr. Aranguiz's letter contains the following:

> Mr. Verlon has been under my care for about 2 years at the Lee Health Rheumatology Clinic, part of Lee Physicians Group in Fort Myers, FL. Mr. Verlon suffers from a debilitating condition that affects his ability to perform any moderate to extreme physical activity, or remain in the same position for more than a few minutes. He has the diagnosis of Sjogren's Syndrome, based on a low titter SSB with negative SSA and negative ANA, associate with significant dryness of the mucosa of the eyes and mouth, with constant symptoms and difficulty reading and swallowing dry foods, He also suffers from severe, debilitating fibromyalgia, with frequent muscle spasms, and severe muscular stiffness and pain all over his body, frequently the spasms wake him up from sleep. The pain

> is sharp and lacerating, and he has limited mobility. He normally takes cyclobenzaprine with minimal alleviation. He has extreme fatigue and malaise all day. Stiffness in the morning is so severe he needs several hours to start moving around. Patient is on Plaquenil, he has tolerated the medication well, he has not had any internal organ complication from Sjogren's Syndrome to the date. He continued to have severe dryness in his eyes, with irritation and cracked skin corners. Patient has sleep apnea and is using a CPAP at night, which makes the mouth dryness even worse. He is exercising at the pool. Patient has seborrheic dermatitis and he is using desonide in his face with some results, He is always uncomfortable and has difficulties with activities of daily living. His wife is helping him in every activity.

(Tr. 7). The Appeals Council acknowledged that Plaintiff submitted a letter from Dr. Aranguiz dated February 3, 2020 and determined that "this evidence does not show a reasonable probability that it would change the outcome of the decision." (Tr. 2).

There is no dispute that the letter dated February 3, 2020 is new evidence because it did not exist prior to the date of the ALJ's decision. Whether this evidence relates to a period on or before the decision is not so easily resolved. Plaintiff argues that this letter relates to the period prior to the decision. (Doc. 25, p. 39). Plaintiff relies on Dr. Aranguiz's statement that Plaintiff had been under his care for 2 years. (Doc. 25, p. 39, Tr. 7). But nothing in the letter shows this opinion relates to any time other than the present. (Tr. 7). While Dr. Aranguiz may have treated Plaintiff for 2 years, the letter is written as to Plaintiff's present condition. (Tr. 7). For example, Dr. Aranguiz states that Plaintiff: "suffers from severe, debilitating fibromyalgia with frequent muscle spasms and severe muscular stiffness and pain

all over his body . . . the pain is sharp and lacerating . . . he has limited mobility . . He has extreme fatigue and malaise all day. . . he is exercising at the pool . . . he is always uncomfortable and has difficulties with activities of daily living . . . His wife is helping him in every activity." (Tr. 7). These statements reflect the present status of Plaintiff's limitations and there is no link or reference to an earlier time.

Moreover, Dr. Aranguiz's records before his February 2020 letter do not support the extreme limitations during the relevant period that were contained in the letter. In February 2018, Dr. Aranguiz found on examination that Plaintiff had a normal range of motion in his musculoskeletal area with myofascial tender points at the paraspinal muscles from neck to lower back and with stiffness, but no swelling. (Tr. 468). In May 2018, Plaintiff again had a normal range of motion with multiple myofascial tender points, with full muscle strength in his lower extremities. (Tr. 497). In July and October 2018, Plaintiff's examinations were essentially normal but with myofascial tenderness in the back and lower extremities. (Tr. 510, 585). But even with this tenderness, Dr. Aranguiz recommended that Plaintiff start an exercise regimen. (Tr. 589). In January 2019, Dr. Aranguiz found normal range of motion with no tenderness in Plaintiff's musculoskeletal areas. (Tr. 610). Importantly, he again recommended exercise, even with the pain, to include cycling, swimming, and walking for aerobic activity. (Tr. 615). Finally, in July 2019, while continuing to diagnose Plaintiff with Sjogren's Syndrome and fibromyalgia, he also continued to

recommend aerobic activity such a pool exercises, walking, and bicycle riding. (Tr. 765). While the letter mentions exercising in the pool, if Plaintiff "suffers from a debilitating condition" such that "it affects his ability to perform any moderate to extreme physical activity," then the repeated recommendations to exercise during the relevant time period contradict this statement. (*See* Tr. 7).

In addition, in the letter, Dr. Aranguiz found that Plaintiff's wife had to help with in every activity of daily living. (Tr. 7). But at the hearing, Plaintiff testified that from time to time, he drives to pick up his children from school and takes one to bowling. (Tr. 57). He waits until his son is done with bowling and drives him home. (Tr. 57). He goes to the grocery store by himself, helps his wife with laundry but takes breaks, and puts dishes in the dishwasher. (Tr. 57). He also uses his phone to access Facebook. (Tr. 58). The evidence during the relevant time period did not support his wife assisting him in every activity. (Tr. 7).

From Dr. Aranguiz's statements in the February 2020 letter, Plaintiff's condition appears to be worsening. But the focus here must be on Plaintiff's condition during the relevant time period prior to the ALJ's decision. Any worsening of Plaintiff's condition after that time period is evidence that does not relate to the period at issue and is not chronologically relevant. *See McClain v. Soc. Sec. Admin.*, 760 F. App'x 728, 732 (11th Cir. 2019) (finding a worsening of the condition after

the date of the hearing decision is an example of evidence that is not related to the period at issue).

In sum, the medical records from Dr. Aranguiz and other medical and non-medical sources during the relevant time period are inconsistent with and do not support the extreme limitations found in the February 2020 letter. Further, the February 2020 letter does not refer to the time period at issue here. And if Plaintiff's condition has worsened, then this evidence does not relate to the time period at issue and is not chronologically relevant. For these reasons, the Appeals Council's decision finding this evidence does not show a reasonable probability that it would change the outcome of the decision is supported by substantial evidence.

## III.   Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on January 14, 2022.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties